# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KHIA EDWARDS,<br><br>                Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                Defendant. | Case No. 06 C 2860<br><br>Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Plaintiff Khia Edwards (hereinafter, the "Plaintiff") and Defendant Social Security Commissioner Michael J. Astrue (hereinafter, the "Defendant") have filed Cross-Motions for Summary Judgment. Plaintiff challenges the denial of her disability benefits. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

### I. FACTUAL BACKGROUND

Where there are Cross-Motions for Summary Judgment, a court must draw all reasonable inferences in each non-movant's favor. *Scherer v. Rockwell Intern. Corp.*, 766 F.Supp. 593, 595 n.1 (N.D. Ill. 1991). When examining the record of social security disability proceedings to determine whether there is substantial evidence for the Administrative Law Judge's (the "ALJ") decision, a court must assess the evidence favoring the plaintiff as well as

the evidence favoring rejection of the claim. *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985).

Plaintiff is an obese female who was thirty years old when the ALJ made his decision. Plaintiff suffers from obesity, sleep apnea, shortness of breath, and depression. She has a high school education and has worked as a factory laborer.

### A. Procedural Background

Plaintiff filed applications for DIB and SSI benefits in June 2002, alleging a disability onset date of November 1, 2000. On November 16, 2004, an ALJ presided over an administrative hearing at which Plaintiff, a medical expert, and a vocational expert testified. On October 27, 2005, the ALJ found that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review of the ALJ's decision; therefore, the ALJ's decision was the Commissioner's final decision.

### B. Medical History

Plaintiff's available medical history begins in February 1999 and continues until December 2003. Throughout this period, Plaintiff made various trips to emergency rooms. Plaintiff complained of throat difficulties, including prolonged coughing, sore throat, enlarged tonsils, and sinus congestion; knee and back pain; shortness of breath; wheezing; and chest tightness. During this period, Plaintiff was diagnosed with bronchitis with a swelling of the tonsils (January 2002), crepitus in the knees (June

2002), bronchitis (February 2003), recurrent acute sinusitis (March 2003), and allergic rhinitis (March 2003). Plaintiff was first given an Albuterol inhaler in April 2002. On several occasions, Plaintiff was prescribed pain medication for her back and knee problems. As early as January 2002, Plaintiff weighed 410 pounds. As of March 2003, Plaintiff reported that for exercise, she walked a distance of two blocks two times a week and walked up and down her stairs four times a day.

In February 1999, Plaintiff's treatment records indicate that Plaintiff's sleep apnea had improved with the use of a CPAP, a "continuous positive airway pressure" device which is used to treat sleep apnea. Specifically, records indicate that Plaintiff's energy level had increased and that she was able to sleep comfortably for 8 to 10 hours at a time. In November 1999, records indicate that Plaintiff's sleep apnea was again better with use of the CPAP and her nighttime bed wetting was gone. Plaintiff mentioned no problems with the CPAP.

A state agency reviewing physician opined that Plaintiff could perform medium level work in October 2001. At that time, a doctor indicated that Plaintiff used a CPAP for sleep apnea and that her knee and back problems were treated.

In July 2002, Plaintiff underwent a consultive examination at the request of the Social Security Administration (hereinafter, the "SSA") with Dr. Fauzia A. Rana, M.D. Dr. Rana observed that

Plaintiff's breath sounds were decreased, but he did not observe rales, rhonchi, or wheezing. Plaintiff had no edema in her extremities and no redness or tenderness in her joints. Her gait and motor power were normal, but her reflexes were depressed. Secondary to her obesity, she flexed her knees to 100 degrees (normal is 150 degree flexion) and her spine to 80 degrees (normal is 90 degrees). Dr. Rana found that Plaintiff was alert and oriented, cooperative, and had a fair ability to concentrate. Dr. Rana diagnosed Plaintiff with the following: (1) morbid obesity; (2) chronic obstructive and restrictive lung disease with sleep apnea; (3) possible degenerative arthritis; and (4) high blood pressure.

Dr. William Convoy, M.D. reviewed the record in August 2002 and opined that Plaintiff could perform light level work. After reviewing Dr. Rana's findings, however, Dr. Convoy opined that Plaintiff should be limited to sedentary level work. Sedentary level work involves lifting no more than ten pounds, sitting about six hours in an eight-hour workday, and standing/walking two hours in an eight-hour workday.

### C. Testimony at Plaintiff's Hearing

At her hearing, Plaintiff testified that she weighs 410 pounds and suffers from sleep incontinence, obesity, sleep apnea, shortness of breath, and sinus problems. She also testified that she suffers from lumbar sacral pain, foot tenderness, and swelling

in her ankles and knees. Additionally, Plaintiff testified that she cannot engage in many normal activities, including driving, going to church, and showering. She testified that she falls asleep throughout the day and can sleep only forty-five minutes at a time. She is unable to lie down and sleeps sitting up on her bed. Plaintiff testified that although she had tried to use her CPAP, she could not due to her sinuses. When required to go up and down stairs, she can only go one step at a time and must stop and sit in between steps. Plaintiff testified that she leaves her home only when necessary to go to the doctor.

Dr. Ashok Jilhewar, M.D. testified as a medical expert at the hearing. Dr. Jilhewar testified that Plaintiff was morbidly obese with a body mass index exceeding 60. Dr. Jilhewar found that Plaintiff's obesity caused decreased range of motion in her back and knees. Dr. Jilhewar could find no medical documentation in the record to support Plaintiff's claims that she could not use the CPAP, and requested documentation of this claim.

After the hearing, Plaintiff's treating physician, a physician's assistant, completed a form documenting Plaintiff's treatment. He diagnosed morbid obesity, asthma, arthritis, sleep apnea, edema, congestive heart failure, sinusitis, and nasal polyps. The physician's assistant indicated that "Patient [is] unable to use C-Pap secondary to congestion from nasal polyps and chronic sinusitis. Unable to breathe through nose." The form also

indicated that Plaintiff could not stand for an extended length of time, has back and knee pain, cannot sit for extended periods of time without edema and back pain, and cannot stay awake during the day due to nighttime insomnia.  The report limited Plaintiff to less than sedentary work.  Although Dr. Jilhewar was forwarded this form, he rejected the opinion and stated that the plaintiff could do sedentary work.

### D. The ALJ's Decision

After the hearing and a thorough review of the record, the ALJ issued a written opinion denying Plaintiff's claim.  The ALJ followed the required five-step evaluation process outlined in 20 C.F.R. §§ 404.1520 and 416.920.  The ALJ found that Plaintiff was not currently working and had a severe impairment.  He did not, however, find that Plaintiff satisfied the third step by meeting or equaling a listed impairment.  The ALJ did not articulate his reasons for this conclusion or identify which impairment Plaintiff argued she met or equaled.  Then, the ALJ determined that Plaintiff was unable to perform her past relevant work, but remained capable of unskilled sedentary tasks involving not more than a 90% concentration rate.  The SSA showed that there were sufficient jobs in the national economy that Plaintiff could perform.

### II. **STANDARD**

This Court must determine whether the disability determination is supported by substantial evidence.  *Young v. Secretary of Health*

*and Human Services*, 957 F.2d 386, 388 (7th Cir. 1992). "Substantial evidence may be something less than the greater weight or preponderance of the evidence"; it is evidence that a reasonable mind would accept as adequate to support a conclusion. *Id.* at 389; *Bionion on Behalf of Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). A district court should not "reweigh" the evidence; as such, the question for review is not whether the plaintiff is disabled, but whether the ALJ's finding of non-disability is supported by substantial evidence in the record. *Walker v. Brown*, 834 F.2d 635, 640 (7th Cir. 1987).

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d), 1382c. The determination of disability requires a five-step inquiry: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. 20 C.F.R. §§ 404.1520(a)-(f); *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287 (1987). A claimant has the burden of proof through step four. *Young*, 957 F.2d at 389.

## III. DISCUSSION

Plaintiff argues that the ALJ's decision should be overturned on two primary grounds: first, because the ALJ's determination that Plaintiff did not meet or equal a listed impairment was not supported by substantial evidence; and second because the ALJ's decision that Plaintiff can do sedentary work was not supported by substantial evidence. Because this Court finds that remand is necessary because the ALJ failed to provide a "logical bridge" linking the facts and his conclusions, this Court does not address the majority of Plaintiff's arguments.

### A. Step Three: The Listed Impairment Inquiry

Under the five-step inquiry, if an ALJ finds that a claimant meets or equals the requirements of a listed impairment and that impairment has lasted or is expected to last twelve continuous months, then the claimant is presumed disabled without further inquiry. 20 C.F.R. §§ 404.1520; 416.920. Here, the ALJ found that Plaintiff did not meet or equal the requirements of any impairment listing. The ALJ merely stated:

> The medical evidence indicates that the claimant has obesity, hypertension, asthma, sleep apnea, and osteoarthritis, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

A remand is thus necessary.

An ALJ must provide sufficient analysis in order to enable meaningful judicial review of his decision. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589 (7th Cir. 2002). In order to do so, an ALJ must build a "logical bridge" from the facts to his conclusions. *Scott*, 297 F.3d at 595. In analyzing the listed impairment step of the required five-step process, an ALJ's failure to mention the specific listings under which the ALJ evaluated the claimant's impairments may require a remand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002); *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *but see Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999).

In *Brindisi*, the ALJ found that a child claimant did not meet or equal any listed impairment. That ALJ listed the child's impairments and noted that none of these impairments met the requirements of a listed impairment. The Seventh Circuit noted that "the omission of any discussion of [the child's] impairments in conjunction with the listings frustrates any attempt at judicial review . . . Such a lack of reasoning prevents us from applying the decision structure undergirding disability determinations to a substantive analysis of [the child's] impairments." The Court concluded that the "conclusory and conflated analysis" prevented it

from finding that substantial evidence supported the ALJ's conclusions, and therefore remanded.

Likewise, in *Scott*, the ALJ did not discuss or reference the particular listing at issue and merely stated "the claimant's impairments do not meet or equal . . . any listed impairment . . ." Again, the Seventh Circuit remanded because it was unable to engage in meaningful review. Specifically, the Court noted that "proper resolution of this case requires that the ALJ consider . . . [the] proffered medical evidence and articulate specific reasons for accepting or rejecting it. After doing so, he must discuss his factual findings in light of Listing 112.05."

As in *Brindisi* and *Scott*, the ALJ here merely listed the Plaintiff's physical impairments and then concluded that these did not meet or medically equal a listed impairment. There is no mention of Section 12.02, the listing for "organic mental disorders" which the parties agree is at issue. There is no mention of the requirements of that listing or discussion of why the Plaintiff's symptoms fail to meet those requirements. Without such analysis, this Court cannot begin to evaluate whether the ALJ's decision on this point was supported by substantial evidence.

Granted, the ALJ provided some analysis in this opinion and in that analysis, indicated certain credibility determinations. However, this analysis is clearly linked to the ALJ's decision regarding steps four and five of the decision-making matrix, not

step three. Although these credibility determinations might be applicable to step three, creation of a "logical bridge" from the facts to one conclusion cannot help this Court follow the ALJ's path in reaching a different conclusion. (As noted below, furthermore, the ALJ's "logical bridge" to these credibility determinations is likewise shaky.) Thus, this Court must remand this case back to the agency for further proceedings.

**B. Determination of Plaintiff's Credibility**

Additionally, Plaintiff argues that the ALJ failed to adequately consider her testimony regarding her symptoms. (This argument is couched in a larger contention that Plaintiff did indeed meet an impairment listing. Although the contention as a whole cannot be evaluated by this Court because this Court can only review such a decision as articulated by the ALJ, this Court believes that the Plaintiff's argument has merit.)

An ALJ must consider a claimant's subjective claims of pain and symptoms, but a claimant's statements about her pain or symptoms will not alone establish that she is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345 (7th Cir. 2005); 20 C.F.R. §§ 404.1529(a). A claimant's statements about the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence. *Washington v. Barnhart*, --- F.Supp.2d ---, 2007 WL 966992 (N.D. Ill. Mar. 29, 2007); S.S.R. 96-7. Where an ALJ finds

a claimant not to be credible, however, he must ground the reasons for his credibility finding in the evidence and articulate those reasons. *Brindisi*, 315 F.3d at 787; *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). It is not sufficient to make "a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Brindisi*, 315 F.3d at 787.

The ALJ here stated that "the undersigned finds claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." The body of the decision, however, fails to set forth why the ALJ concluded that Plaintiff was not credible – regarding Plaintiff's credibiliy, the opinion merely states "while her allegations are somewhat believable, those allegations have not been adequately developed in the record." Nowhere does the ALJ articulate any reason that the Plaintiff's allegations were not credible. As such, the ALJ's reasoning here was likewise insufficient.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court grants Plaintiff's Motion for Summary Judgment and remands the case to the Social Security Administration for further proceedings. Defendant's Motion for Summary Judgment is denied. In arriving at this conclusion about the deficiencies in the ALJ's opinion, the Court

makes no finding as to the merits of Plaintiff's DIB or SSI claims. *Davis v. Barnhart*, 2004 WL 1005804 at *8 n. 28 (N.D. Ill. May 6, 2004).

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** May 24, 2007